**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOAH ALEXANDER GASPERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-86-MN-JLH |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Noah Alexander Gaspero appeals from an unfavorable decision of the Commissioner of the Social Security Administration denying his applications for child disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. § 405(g).

The parties filed cross-motions for summary judgment. (D.I. 16, 19.) For the reasons announced from the bench on November 15, 2022, Plaintiff's motion should be DENIED and Defendant's cross-motion should be GRANTED.

**I.   LEGAL STANDARDS**

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014).  In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry.  *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II.    DISCUSSION

My Report and Recommendation was announced from the bench on November 15, 2022, as follows:

> For the reasons I am about to summarize, Plaintiff's motion for summary judgment should be denied and the Commissioner's cross-motion for summary judgment should be granted.
>
> Plaintiff assigns numerous errors to several steps of the ALJ's analysis. Plaintiff also contends that the appointment of the ALJ who heard his case was constitutionally defective.
>
> Plaintiff first contends that the ALJ erred at step three. At step three, the ALJ compared the medical evidence of [Plaintiff]'s impairments to a list of impairments presumed severe enough to find an individual per se disabled. Plaintiff argues that the ALJ did not compare his ulcerative colitis and joint hypermobility syndrome to the correct listings. I disagree. Ulcerative colitis is specifically mentioned in Listing 5.06,[1] and the ALJ evaluated Plaintiff's impairments against that listing.[2] The ALJ also properly compared Plaintiff's joint hypermobility syndrome to Listing 1.18, an umbrella category for abnormalities of major joints.[3] Plaintiff has not cited to this Court any listing that Plaintiff believes is more appropriate.
>
> Plaintiff contends that the ALJ should have considered his headaches according to SSR 19-4P and paragraph B of Listing 11.02. He admits, however, that his headaches are a side effect of his medicine, and he therefore does not have a primary headache disorder.[4] Since [he] does not have a primary headache disorder,

---

[1] 20 C.F.R., Pt. 404, Subpt. P., App. 1, Section 5.00(E)(1).

[2] (Transcript of Social Security Proceedings, D.I. 12 ("Record" or "R."), at 18.)

[3] (R. 18); 20 C.F.R., Pt. 404, Subpt. P., App. 1, Section 1.00(I)(1).

[4] (D.I. 17 at 6.)

the ALJ did not need to assess symptoms of his headaches against Listing 11.02.[5]  Nor has plaintiff explained how the evidence of his headaches equals that listing.

Plaintiff also argues that the ALJ erred in determining his RFC.  The Court has carefully reviewed the pertinent portions of the record on this issue.  Having done so, the Court understands and has considered Plaintiff's arguments regarding the ALJ's decision not to include additional limitations in the RFC.  But it is not the role of this Court to second-guess the ALJ's fact finding.  Even if this Court might have come to a different conclusion on the same evidence, there was substantial evidence to support the ALJ's findings regarding Plaintiff's RFC.

The ALJ found that Plaintiff has severe medically determinable impairments of ulcerative colitis, AMPS, and hypermobility that could reasonably cause the symptoms he alleges.  However, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence of record.[6]  From there, the ALJ determined that Plaintiff could perform light work with the only limitations being that he could never climb ladders, ropes, and scaffolds and only occasionally tolerate exposure to vibration.[7]

As an initial matter, I reject Plaintiff's argument that the ALJ committed legal error by not explaining the basis for his findings in a way that would permit meaningful judicial review.

---

[5] *See* SSR 19-4P, 84 Fed. Reg. 44667 (Aug. 26, 2019) ("We may establish only a primary headache disorder as an [medically determinable impairment]. We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition."); *see also Lawrence W. v. Comm'r of Soc. Sec.*, No. 21-18959, 2022 WL 16555246, at *4 (D.N.J. Oct. 31, 2022) (citing SSR 19-4P); *Tollon v. Comm'r of Soc. Sec.*, No. 21-1507, 2022 WL 2610518, at *13 (N.D. Ohio May 3, 2022), *report and recommendation adopted*, 2022 WL 2286214 (N.D. Ohio June 24, 2022) ("[T]he undersigned finds that Tollon has not identified evidence showing that her headache is a 'primary headache disorder' such that the ALJ was required to consider Listing 11.02.").

[6] *See* 20 C.F.R. §§ 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."), § 416.929(a) (same).

[7] (R. 18.)

Contrary to Plaintiff's suggestion, the law does not impose a minimum page requirement, and the ALJ's opinion adequately summarizes the evidence he considered and explains the basis for his findings.

Plaintiff next argues that the ALJ's RFC failed to take into account the frequency of his bi-monthly (*i.e.*, every two months) Remicade injections, which Plaintiff suggests would require him to miss work. But even if medical appointments were required to be taken into account with fashioning an RFC (and the Commissioner contends they are not), nothing in the record indicates that Plaintiff would be required to schedule his Remicade appointments during working hours so that they would interfere with his ability to obtain work.[8]

[Plaintiff] argues the ALJ needed to include limitations in the RFC to account for the side-effects he experiences from the Remicade treatments, including fatigue and headaches. The Third Circuit has observed that side effects such as "drowsiness often accompanies the taking of medication," and "should not be viewed as disabling unless the record references serious functional limitations" related to them.[9] Here the record lacks reference to any serious functional limitation related to his reported Remicade side effects. Given that, the ALJ did not commit legal error by foregoing side effect-related limitations in the RFC, particularly since the same records the ALJ clearly considered reflect that the side effects were minor and/or dissipated quickly.[10]

---

[8] *See Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) ("[N]othing in the record indicates that Cherkaoui was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work."); *Stull v. Saul*, No. 19-227, 2020 WL 5774895, at *1 n.1 (W.D. Pa. Sept. 28, 2020) ("Moreover, while the record undoubtedly shows that Plaintiff has attended a number of appointments over the years, there is no indication in the record that each appointment requires her to miss a full day of work. Additionally, since the record does not show that such appointments could not be scheduled outside of Plaintiff's prospective working hours, there is also no indication that Plaintiff would necessarily have to miss partial days of work in order to attend her appointments.").

[9] *Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005) (quoting *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)).

[10] (*See, e.g.*, R. 19–21 (citing 3F (R. 623) (Telephone encounter: "Noah has been feeling dizzy since remicade. It initially went away and came back . . . [He] has had no headaches."))); *see also* R. 928 ("Reports fatigue after infusions, and notes blue tinted vision for a few minutes after the start of the infusion, then it resolves.").)

5

Plaintiff next argues that the RFC finding failed to take into account Plaintiff's need for unscheduled bathroom breaks to address the cyclical and unpredictable nature of flares and diarrhea resulting from his ulcerative colitis and irritable bowel disease. However, it is clear from the ALJ's opinion that he was aware of and took into consideration the evidence of Plaintiff's reported diarrhea during the relevant period.[11]   In particular, the ALJ recognized that at the beginning of the relevant period, Plaintiff had c. diff infections (which caused diarrhea) but that he had not had another such infection since July 2017.   Plaintiff again reported ongoing diarrhea in 2019 and it was later recommended that he start taking Remicade, which improved his symptoms.  The ALJ also recognized that Plaintiff had a (reportedly weeks-long) period of frequent diarrhea later in December 2020, but that his symptoms improved with medication and that Plaintiff subsequently returned to having normal bowel movements.

Plaintiff's real point appears to be that his ulcerative colitis impairment will cause him to again to be stricken with a lengthy period of serious diarrhea in the future and that the ALJ's RFC failed to take into account the fact that he would need long, unscheduled bathroom breaks when that occurred.  But the ALJ was entitled to agree with the state agency doctors who were aware of Plaintiff's ulcerative colitis and did not recommend an additional limitation to account for future anticipated diarrhea. And, contrary to Plaintiff's suggestion, there is no requirement that an ALJ must, as a matter of law, include "unscheduled breaks to use the rest room".[12] in the RFC whenever a claimant has severe ulcerative colitis.

Plaintiff next contends that the ALJ erred by not including in the RFC scheduled days off, limitations for time off task, and more restrictive walking and standing limitations necessitated by Plaintiff's pain and fatigue from his joint hypermobility syndrome and AMPS.  But the ALJ was entitled to conclude, as he did, that Plaintiff's statements regarding the severity of his pain and fatigue symptoms were not entirely consistent with the other evidence of record.  There is no requirement that a claimant experience no pain in order to be found not disabled.  The ALJ was entitled to rely on the opinions of the state medical examiners, who concluded that, notwithstanding Plaintiff's hypermobility and AMPS, Plaintiff

---

[11] (R. 20.)

[12] (D.I. 17 at 9.)

could perform light work with additional limitations.  The ALJ also pointed out, among other things, that Plaintiff reported to a physician in March 2021 that he had tapered himself off his rheumatologist-prescribed medication and that his pain was adequately controlled.[13]

Plaintiff argues that the ALJ should have included an off-task limitation due to Plaintiff's depression.  As discussed below, however, Plaintiff did not raise the issue of his depression inhibiting his ability to perform work related tasks, and his brief to this Court does not point to evidence in the record that would suggest that an off-task limitation due to his depression is even appropriate.  The ALJ's opinion reflects that he expressly considered and took into account Plaintiff's father's testimony that Plaintiff has memory problems; the ALJ noted that Plaintiff's objective exams showed no cognitive deficits.[14]

Plaintiff next argues that he "was prejudiced by his lack of counsel" in the proceedings before the ALJ.[15]  I take Plaintiff to be arguing, in part, that the ALJ failed to adequately develop the administrative record.[16]  I disagree.  Plaintiff contends that the ALJ should have requested medical records from Dr. Ufberg, but the record reflects that Dr. Ufberg merely prescribed Plaintiff medication by phone one time when Plaintiff's treating gastroenterologist was out of the office.  Nor does Plaintiff explain how the ALJ's failure to request records from Dr. Ufberg was anything other than harmless, especially since there is no indication that Dr. Ufberg possessed any records that weren't already before the ALJ.

Plaintiff contends that the ALJ could have obtained a "treating source opinion" from one of Plaintiff's treating physicians, but Plaintiff again fails to explain how this might have changed the ALJ's decision.  Putting aside Dr. Ufberg, the ALJ had no reason to believe that the administrative record was missing any pertinent medical records from any of Plaintiff's

---

[13] (R. 21.)

[14] (R. 20.)

[15] (D.I. 17 at 10.)

[16] *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) ("An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record"); *see also* 20 C.F.R. § 404.1545(a)(3).

numerous treating physicians.[17]  The ALJ also had before him the reports of state agency medical consultants who had reviewed the medical records of Plaintiff's treating physicians and opined on Plaintiff's limitations.

Plaintiff suggested to this Court that the ALJ should have ordered a psychological consultative examination.  But, again, Plaintiff did not allege disability based on psychological limitations in his benefit applications, nor did the records before the ALJ indicate that mental illness or psychological issues were preventing Plaintiff from performing work functions.  I likewise reject Plaintiff's argument that the ALJ committed legal error by not requesting a consultative examination to explore the limiting effects of Plaintiff's headaches.  There is no suggestion in Plaintiff's applications or elsewhere in the record that his headaches would keep him from performing work functions.  The record before the ALJ reflected that Plaintiff's headaches were secondary to his other issues and that he reported them as being as a side-effect from Remicade, and the record only shows one instance of headaches reported during the period of alleged disability.[18]  In short, the record was adequate for the ALJ to make his determination, and he had no duty to further investigate restrictions arising from psychological issues or headaches.

Plaintiff also suggests that an attorney might have made better arguments to the ALJ.  But the mere lack of counsel does not by itself render the proceeding before the ALJ unfair, and it is not an independent basis for a remand.[19]

Finally, Plaintiff argues that the case should be remanded because the ALJ that heard it was illegally appointed.  Specifically, Plaintiff argues that Acting Commissioner Berryhill's tenure had expired under the Federal Vacancies Reform Act ("FVRA") when she ratified the ALJ's appointment in July 2018.  Because the ALJ was not appointed by an agency

---

[17] (*See* Soc. Sec. Admin. Office of Disability Adjudication and Review Transcript, R. 37–39 (covering generally an exchange where the ALJ confirms with Plaintiff and his father that he has the entirety of Plaintiff's medical records in the record before him and explains that he will "leave the record open for a period of seven days" and if they find "some additional records that we need to obtain" to let him know and "we'll request them").)

[18] (*See* R. 987.)

[19] *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

head, Plaintiff contends, the appointment violated the Appointments Clause of the Constitution. The majority of courts to have addressed that argument, including courts in this circuit, have rejected it, concluding that Ms. Berryhill was lawfully serving as Acting Commissioner when she ratified ALJ appointments in July 2018.[20] I am persuaded by their reasoning and reject Plaintiff's argument.

---

[20] *See, e.g, Neale v. Kijakazi*, No. 21-915-SRF, 2022 WL 6111689, at *9 (D. Del. Oct. 7, 2022); *Reddick v. Kijakazi*, No. 21-1782, 2022 WL 16703903, at *17 (M.D. Pa. Oct. 7, 2022), *report and recommendation adopted*, 2022 WL 16700395 (M.D. Pa. Nov. 3, 2022); *Sidney M. v. Kijakazi*, No. C21-2034, 2022 WL 4482859, at *21 (N.D. Iowa Sept. 26, 2022); *Lance M. v. Kijakazi,* No. 21-628, 2022 WL 3009122, at *14 (E.D. Va. July 13, 2022), *report and recommendation* adopted, 2022 WL 3007588 (E.D. Va. July 28, 2022); *Williams v. Kijakazi*, No. 21-141, 2022 WL 2163008, at *4 (W.D.N.C. June 15, 2022); *Bauer v. Kijakazi*, No. 21-2008, 2022 WL 2918917, at *17 (N.D. Iowa July 25, 2022); *Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022); *see also Avalon v. Kijakazi*, No. 21-02051, 2022 WL 1746976, at *8 (D. Nev. May 27, 2022) (commenting that the court is "not convinced" of the argument's merit because of the "overwhelming weight of authority" recognizing then-Acting Commissioner Berryhill's appointments as valid); *Mark F. v. Berryhill*, No. 18-02031, 2019 WL 1055098, at n.2 (S.D. Ind. Mar. 6, 2019).

### III. CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment (D.I. 16) be DENIED and the Commissioner's cross-motion (D.I. 22) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: December 21, 2022

The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE